UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Susan W. Hanger,

Plaintiff,

vs. ORDER

Lake County, a political subdivision of the State of Minnesota; Wilma H. Clark, personally and individually; Clair A. Nelson, personally and individually; Sharon Hahn, personally and individually; Stanley Nelson, personally and individually; Derrick Goutermont, personally and individually; and Pamela Parkinson, personally and individually,

Defendants. Civ. No. 01-1506 (RHK/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 16th day of August, 2002.

I. Introduction

On August 15, 2002, this Court heard argument on the Defendants' Motion to Compel. By this Motion, the Defendants Lake County ("the County"), and the individual County Commissioners -- Wilma H. Clark, Clair A. Nelson, Sharon Hahn, Stanley Nelson, and Derrick Goutermont (collectively, "the County Commissioners"), seek an Order requiring the Plaintiff Susan W. Hanger ("Hanger") to

(27)

FILED AUG 16 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

produce authorizations releasing her medical, psychiatric, psychological and/or counseling records, as the County, and its Commissioners believe that, in commencing this lawsuit, the Plaintiff has placed her mental condition "in controversy." At the time of the Hearing, Hanger appeared by Steven W. Schneider, Esq., and the County, and the County Commissioners, appeared by Dyan J. Ebert, Esq. The remaining Defendant, Pamela Parkinson ("Parkinson"), who appears pro se, made no appearance for the purposes of this Motion.

For reasons expressed at the Hearing, and briefly reiterated below, we deny the Motion of the County, and of the County Commissioners, to compel.

## II. Factual and Procedural History

Hanger was employed by the County from April of 1996, through March 3, 2000. In May of 1999, when she held the position as the County's Human Resources Administrator and Safety Officer, she was granted maternity leave, pursuant to the Family Medical Leave Act ("FMLA"). Her leave began on May 25, 1999, and extended through July 26, 1999. During her FMLA leave, the County hired Parkinson, who is an independent contractor, as Interim Head of Human Resources. Parkinson assisted the County on personnel-related matters.

Once she returned to work, Hanger and Parkinson worked together but, apparently, did not have a good working relationship.

Hanger terminated her employment effective August 20, 1999. Shortly thereafter, she requested a Veteran's Preference Hearing, and alleged that she had been constructively discharged from her position. On October 29, 1999, Hanger and the County entered into an agreement, in which Hanger was reinstated as the Lake County Personnel Officer, with full back wages to the date of her voluntary termination.

After Hanger's reinstatement, she and Parkinson no longer worked together, and Parkinson, apparently, played no role in the County's personnel issues. Thereafter, Hanger continued her position for approximately five more months, when, on March 3, 2000, she again terminated her employment with the County.

Hanger initiated this action in August of 2001. In her Complaint, she alleges the following claims: in Count I, a violation of the FMLA; in Count II, a violation of Title VII due to discrimination on the basis of gender; in Count III, a violation of the Minnesota Human Rights Act ("MHRA") due to discrimination on the basis of gender; in Count IV, a violation of the MHRA due to discrimination on the basis of a perceived disability; in Count V, a conspiracy in violation of Title 42 U.S.C. §1985; in Count VI, a willful and deliberate deprivation of rights under the FMLA; in Count VII, willful and deliberate deprivation of rights under Title VII; in Count VIII, a willful and deliberate deprivation of rights

under the MHRA; in Count IX, negligent retention and supervision of Parkinson; and in Count X, negligent infliction of emotional distress.[1]

The issue presented arises from the negligent infliction of emotional distress claim which, Hanger contends, is entirely based on her claim of a direct invasion of her rights due to the actions, which were taken by the Defendants at a public meeting, conducted by the County Commissioners, on July 13, 1999. At that time, the County Commissioners discussed an amendment to Parkinson's contract, that would allow her to remain in the position of Interim Head of Human Resources even after Hanger returned from her FMLA leave. See, Partial Transcript of Lake County Board Meeting conducted on July 13, 1999, attached to Affidavit of Steven W. Schneider ("Schneider Aff."). Hanger claims that the County Commissioners ultimately placed Parkinson in a supervisory position over her, effectively demoting her during her FMLA time. Id. She asserts that her public demotion caused her emotional distress.

Early in this case, Hanger and the Defendants spoke about an amendment to the Complaint, and there had been discussions, appar-

---

[1]Hanger has now stated that she mistakenly included the Title VII and the MHRA claims, and that she agrees to dismiss Counts II, III, IV, VII, and VIII of the Complaint. She has also agreed to the dismissal of Count IX, the negligent retention and supervision claim. To our knowledge, however, a stipulation of dismissal has not, as yet, been submitted to the Court.

ently, about Hanger dropping the emotional distress claims, including both the claim for negligent infliction of emotional distress, and the claim for emotional distress damages under Section 1985. According to the County, and the County Commissioners, Hanger's attorney had also agreed to produce medical authorizations if Hanger intended to go forward with the emotional distress claims. See, Affidavit of Dyan J. Ebert, at ¶3 ("Ebert Aff."). On July 15, 2002, however, Hanger informed the County, and the County Commissioners, that she was proceeding with the emotional distress claims. See, Ex. H to Ebert Aff. Hanger advised that she would not produce her medical or mental health records, however, as she believed that she had not placed her mental condition in controversy. Id. She did, however, testify at her deposition about the mental health treatment she has sought, and the types of injuries she has allegedly sustained. See, Deposition of Susan Warner Hanger, at 174-84, attached to Schneider Aff. ("Hanger Deposition"). The County, and the County Commissioners, have now moved to compel Hanger to produce authorizations so that they may access her mental health records.

## III. Discussion

Rule 26(b), Federal Rules of Civil Procedure, governs the scope and limits of discovery by providing that "[p]arties may obtain discovery regarding any matter, not privileged, that is

relevant to the claim or defense of any party," and that "[r]elevant information need not be admissible at trial if the discovery sought appears reasonably calculated to lead to the discovery of admissible evidence." "While the standard of relevance in the context of discovery is broader than in the context of admissibility, this often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery." Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992). Instead, "[s]ome threshold showing of relevance must be made before parties are required to open the doors of discovery and produce a variety of information which does not reasonably bear upon the issue in the case." Id.; see also, Wacker v. Gehl Co., 157 F.R.D. 58, 58 (W.D. Mo. 1994).

In determining the "threshold showing of relevance" in these circumstances, our analysis necessarily implicates Rule 35(a), Federal Rules of Civil Procedure, given the clear parallels between the analysis of whether a mental condition is "in controversy," for purposes of a mental health examination, and whether the issue of mental health is "in controversy" for purposes of compelling a party to turn over her medical records. See, e.g., Ulrich v. City of Crosby, 848 F. Supp. 861, 879 (D. Minn. 1994)(stating the Rule 35 "lends an instructive focus" to the analysis of whether medical records may be examined). As provided by Rule 35(a):

> When the mental or physical condition * * * of a party * * * is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner * * *. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties * * *.

Rule 35(a), Federal Rules of Civil Procedure (2001).

As we observed in O'Sullivan v. State of Minnesota, 176 F.R.D. 325, 327 (D. Minn. 1997), citing Tomlin v. Holecek, 150 F.R.D. 628, 632 (D. Minn 1993), in turn citing Looney v. National Railroad Passenger Corp., 142 F.R.D. 264, 265 (D. Mass. 1992), Rule 35 exists as "a forthright attempt to provide a level playing field between the parties in their respective efforts to appraise the Plaintiff's psychological state." See also, Sauer v. Burlington R.R. Co., 169 F.R.D. 120, 124 (D. Minn. 1996); Stewart v. Burlington Northern R.R. Co., 162 F.R.D. 349, 351 (D. Minn. 1995). "Nevertheless, when a plaintiff's mental condition has not been placed 'in controversy,' as the term is employed in Rule 35, the playing field is not uneven, and no leveling is required." O'Sullivan v. State of Minnesota, supra at 327. In such a circumstance, the 'good cause' necessary is not present and, therefore, the invasive examination contemplated by Rule 35 is not warranted. Id.

The "good cause" and "in controversy" requirements of Rule 35 are not satisfied by mere allegations in the pleadings, or by a

mere showing of relevance to the case. See, Schlagenhauf v. Holder, 379 U.S. 104, 118-19 (1964). Instead, these two requisites mandate "an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and the good cause exists for ordering each examination." Id. Boilerplate allegations, which are contained in the Complaint, and which relate to mental injury, anxiety, emotional distress, embarrassment, and humiliation, fail to provide a legally sufficient basis for concluding that a Plaintiff's mental condition is genuinely in controversy. See, O'Sullivan v. State of Minnesota, supra at 327.

Further, as our decision in Tomlin v. Holecek, supra at 632, makes clear, "as employed in Rule 35, the term 'mental' refers to 'mental disorders and psychiatric aberrations,' * * * and that to put [her] mental condition in controversy, a plaintiff must assert a claim of mental or psychiatric injury." See also, Turner v. Imperial Stores, 161 F.R.D. 89, 93 (S.D. Cal. 1995)(holding that plaintiff placed a mental condition in controversy when a claim of mental or psychiatric injury is alleged); Cody v. Marriot Corp., 103 F.R.D. 421, 422 (D. Mass. 1984)(declining to find that the plaintiff had placed her mental condition in controversy solely on the basis of her allegation that she had suffered "physical and emotional distress" as a result of defendants' conduct). Thus, as

we stated in O'Sullivan, a mental condition is generally "in controversy" when there is "a cause of action for intentional or negligent infliction of emotional distress;" an "an allegation of a specific mental or psychiatric injury or disorder;" "a claim of unusually severe emotional distress;" an "offer of expert testimony to support a claim of emotional distress;" and/or the plaintiff concedes that the mental condition is "in controversy." O'Sullivan v. State of Minnesota supra at 328, citing Turner v. Imperial Stores, supra at 95.

The issue in this case pivots on this precept. Hanger has alleged that her treatment by the County, and by the County Commissioners caused her to question her self worth, and caused her stress, embarrassment and humiliation. Hanger Deposition, at 183. Specifically, she states that she was embarrassed by "the fact that they called me in and basically demoted me at -- at a public meeting and that everybody knew about it before I ever came back to work, the difficulty facing other people, subordinates or peers." Id. at 183-84. She further explained, in her response to the Defendants' Interrogatory:

> I was subjected to emotional distress by the actions of the defendants. I suffered loss of professional credibility, reputation and respect because of the actions of the defendants. * * * I was embarrassed and humiliated in public meetings. * * * I have suffered from loss of self esteem and self confidence.

Ex. I, at 12, attached to Dyan Aff.

Hanger has represented, however, that she is not claiming that she received psychological treatment for her alleged injuries, and that she will not call a medical expert to testify in support of her emotional distress claims. See, Ex. H to Ebert Aff. Nonetheless, she is maintaining a claim for negligent infliction of emotional distress, which leads the County, and the County Commissioners, to contend that she has placed her mental condition "in controversy."

In contrast, Hanger asserts that this is not they type of negligent infliction claim which places an individual's mental condition "in controversy." Under Minnesota law, in order to maintain a claim of negligent infliction of emotional distress, a plaintiff must prove:

> 1) [she] suffered from a physical injury;
>
> 2) [she] was within the zone of danger of physical impact, that [she] reasonably feared for [her] own safety, and that [she] suffered severe emotional distress as a result; or
>
> 3) "there has been a 'direct invasion of her rights such as that constituting slander, libel, malicious prosecution, seduction or other willful, wanton or malicious conduct.'"

Hern v. Bankers Life Casualty Co., 133 F. Supp.2d 1130, 1135 (D. Minn. 2001), quoting Lickteig v. Alderson, Ondov, Leonard & Sween, P.A., 556 N.W.2d 557, 560 (Minn. 1996), quoting in turn State Farm Mut. Auto. Ins. Co. v. Village of Isle, 122 N.W.2d 36, 41 (Minn. 1963).

In the first category, a plaintiff can recover for mental anguish, which accompanies a physical injury that resulted from a negligent act. See, Lickteig v. Alderson, Ondov, Leonard & Sween, P.A., supra at 560. In the second category, a plaintiff must show that she was within a zone of danger of physical impact; she reasonably feared for her own safety; and she suffered severe emotional distress with attendant physical manifestations. See, Stead-Bowers v. Langley, 636 N.W.2d 334, 342 (Minn.App. 2001), rev. denied (Minn., February 19, 2002). Finally, "[i]n the last category, negligent infliction of emotional distress is an element of the damages arising from an intentional tort that constitutes a direct violation of the Plaintiff's rights." Hern v. Bankers Life Casualty Co., supra at 1135, citing Lickteig v. Alderson, Ondov, Leonard & Sween, P.A., supra at 560.

This last category is, according to Hanger, the only category that is alleged in her Complaint. She asserts that the County Commissioners' actions, in holding a public meeting where they discussed her work, and the proposed working relationship between Parkinson and Hanger, when Hanger returned from her FMLA leave, which included that Hanger would be subordinate to Parkinson -- technically, a demotion -- willfully, wantonly, and maliciously, violated her rights under the FMLA, since they took negative action against her during her leave. Thus, as she is only asserting the

negligent infliction claim as an element of damages under her FMLA claim, she believes that she had not placed her mental condition "in controversy," within the meaning of O'Sullivan. We agree.

The County, and the County Commissioners, place much emphasis on the fact the Hanger has labeled her claim, in her Complaint, as "negligent infliction of emotional distress," and that we have previously stated that Rule 35 examinations "are typically granted * * * [in] a cause of action for intentional or negligent infliction of emotional distress." O'Sullivan v. State of Minnesota, supra at 328. "Typically," because such actions routinely place the claimant's mental or physical condition at issue. As we noted during the course of the Hearing on this Motion, labels are not controlling for these purposes, and a label of "negligent infliction of emotional distress" is only a helpful guideline. Rather, in all instances, we must look beyond the label to the substance of the claim.

Here, the substance of the claim, as delimited by Hanger's representations, clearly places it outside the sphere of Rule 35, owing to the "in controversy" standard. Hanger is only claiming negligent infliction of emotional distress as a element of damages, and she has acknowledged that she will not employ an expert to testify about her mental condition, she will not claim any medical expenses for her mental treatment, she will not produce any mental

health records, and she will not claim any aggravation of a pre-existing mental condition. In short, she is not asserting any claim of mental insult, or injury, caused by the actions of the County, and the County Defendants. We further make clear, as we did at the Hearing, that she has waived the right to make any such assertion at the time of Trial.

Therefore, based on her representation, to which Hanger will be held, she is only claiming emotional damages as they relate to a direct invasion of her rights under the FMLA and, as such, she will recover no such damages if she does not prevail on her FMLA claim. Accordingly, Hanger alleges nothing more than a "garden variety" mental distress claim, which does not place her mental condition in controversy, and which does not obligate her to provide medical authorizations to allow the Defendants' inquiry into her mental condition.

NOW, THEREFORE, It is --

ORDERED:

That the Defendants' Motion to Compel [Docket No. 22] is DENIED.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE