# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No. 03-1386
01-1506 RHK/RLE

| | | |
|---|---|---|
| Susan W. Hanger, | * | |
| | * | |
| Plaintiff-Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District of |
| | * | Minnesota. |
| Lake County, a political subdivision of the State of Minnesota; Wilma H. Clark, personally and individually; Clair A. Nelson, personally and individually; Sharon Hahn, personally and individually; Stanley Nelson, personally and individually; Derrick Goutermont, personally and individually; and Pamela Parkinson, personally and individually, | * | |
| | * | |
| Defendants-Appellees. | * | |
| | * | |

Submitted: February 12, 2004
Filed: December 7, 2004

Before MELLOY, McMILLIAN, and COLLOTON, Circuit Judges.

SCANNED
JAN 25 2005
U.S. DISTRICT COURT MPLS

Pamela Parkinson to serve in Ms. Hanger's stead while Ms. Hanger took FMLA leave.

Ms. Parkinson apparently impressed the Board of Commissioners during her tenure as the interim department head of the Human Resources Department. On July 13, 1999, approximately two weeks before Ms. Hanger was to return from FMLA leave, Ms. Parkinson and the Board of Commissioners met to discuss ways to restructure the Human Resources Department that would enable Ms. Parkinson to remain working in the department after Ms. Hanger returned. The Board specifically discussed where to put Ms. Parkinson in the chain of command. Commissioner Clair Nelson stated that he intended to place Ms. Parkinson in a position of authority over Ms. Hanger. Ms. Parkinson advised the Board of Commissioners to seek legal advice on whether their proposed actions would violate the FMLA.

On July 20, 1999, six days prior to Ms. Hanger's return to work, the Board of Commissioners met with her to discuss the restructuring of the Human Resources Department. Commissioner Nelson told Ms. Hanger that Ms. Hanger would be working for Ms. Parkinson when she returned. Ms. Hanger drafted a letter of resignation shortly thereafter, but she did not submit it to the County.

On July 26, 1999, Ms. Hanger returned to work. Ms. Parkinson advised Ms. Hanger that she was no longer to communicate directly with any of the Board of Commissioners. Instead, Ms. Hanger was to direct her comments through Ms. Parkinson. Ms. Parkinson, rather than Ms. Hanger, controlled the department's budget, and Ms. Hanger was required to submit time sheets for Ms. Parkinson's review. Ms. Hanger continued to receive the same pay and benefits she had been receiving when she took FMLA leave.

On her first day back to work, Ms. Hanger discovered that someone had accessed pornographic websites on her computer. Ms. Hanger believed Ms.

rejected this alternative standard because an employer's decision not to seek legal advice could result from negligence or a good-faith, incorrect assumption about a statute's applicability just as easily as it could result from recklessness. Id. at 135 ("[The rejected standard] would, however, permit a finding of willfulness to be based on nothing more than negligence, or, perhaps, on a completely good-faith but incorrect assumption that a pay plan complied with the FLSA in all respects."). It is clear from McLaughlin, then, that an employer's failure to seek the advice of counsel does not necessarily prove recklessness.

Applying the McLaughlin standard for willfulness to the present FMLA case, Hillstrom, 354 F.3d at 33, we cannot say that the Board knew, or acted with reckless disregard of whether, it would violate the FMLA. Clearly the Board knew that the FMLA was "in the picture." McLaughlin, 486 U.S. at 132. That general knowledge, however, shows neither that the Board knew it would violate the FMLA nor that it acted with reckless disregard for whether its conduct would violate Ms. Hanger's FMLA rights. Further, although it would have been prudent for the Board to have followed Ms. Parkinson's suggestion and obtain legal advice before making the employment decision, McLaughlin makes clear that the Board's failure to do so does not demonstrate "willful" violation of the FMLA. Here, the Board of Commissioners reinstated Ms. Hanger to a position much like the one she previously held, and Ms. Hanger received the same salary and benefits that she enjoyed before she took FMLA leave. Taking the facts in the light most favorable to Ms. Hanger, it may be the case that she identified an FMLA violation. However, we find nothing to suggest recklessness on the part of the Board of Commissioners. The two year statute of limitations applies and bars Ms. Hanger's claim.

We affirm the judgment of the district court.

---

A TRUE COPY OF THE ORIGINAL
MICHAEL E. GANS, CLERK
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
BY: Michael E. Gans

Ms. Hanger alleges that defendants violated the FMLA by failing to return her to the same position she held prior to her leave of absence. When she returned to work, Ms. Hanger received the same salary and benefits she had before taking leave. However, Ms. Hanger was no longer considered the head of the human resources department; she lost control over the department's budget, had to submit time sheets to Ms. Parkinson, and no longer reported directly to the Board of Commissioners.

We need not determine whether Ms. Hanger's allegations survive summary judgment on the merits, because we agree with the district court that Ms. Hanger's FMLA claim is time barred. The Board of Commissioners explained the restructuring of the department to Ms. Hanger on July 20, 1999, and the changes in Ms. Hanger's employment were realized when she returned to work on July 26, 1999. We do not believe that each and every instance when these changes may have been enforced constitutes a new violation of the FMLA, nor do we believe that the Board of Commissioners committed an additional violation of the FMLA by accepting Ms. Hanger's resignation. Rather, we find that Ms. Hanger's reinstatement claim accrued on July 26, 1999. Cf. Delaware State College v. Ricks, 449 U.S. 250, 258 (1980) (in a Title VII and Civil Rights Act case where the only alleged discrimination occurred at the time the plaintiff-professor was denied tenure, the statute of limitations began at the time of that decision, "even though . . . the *effects* of the denial of tenure . . . did not occur until later"). Ms. Hanger filed her FMLA complaint on August 17, 2001. As such, Ms. Hanger failed to meet the two-year statute of limitations.[2] The question remaining is whether the three-year statute of limitations applies.

---

[2]The district court refused to toll the statute of limitations for equitable reasons under a "continuing violations theory." We agree that there is no basis for an equitable modification of the statute of limitations in this case. Ms. Hanger was aware of the alleged violation no later than July 26, 1999, and the Board of Commissioners did nothing inappropriate to impede her from filing suit.